UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJOR CHAPMAN, JR.,

    Plaintiff,                                       Civil Action No. 12-CV-12114

vs.                                                    HON. BERNARD A. FRIEDMAN

COMMISSION OF
SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER REMANDING CASE FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 16, 18]. Magistrate Judge David R. Grand has submitted a Report and Recommendation ("R&R") in which he recommends that the Court grant defendant's motion and deny plaintiff's motion. Plaintiff has filed objections to the R&R and defendant has responded to these objections. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court reviews de novo those portions of the R&R to which proper, timely objections have been filed.

Having reviewed the administrative record, the parties' motions, the R&R, the objections and the response and reply thereto, the Court is persuaded that the matter must be remanded for further proceedings because the record has not been sufficiently developed regarding the extent to which plaintiff's mental impairments and headaches are vocationally limiting. Nor has the record been developed as to the nature and extent of the side effects of plaintiff's medications.

Regarding plaintiff's mental disorders, the ALJ found that plaintiff's affective disorder and anxiety disorder are severe impairments (Tr. 15). Plaintiff testified that he does not "feel comfortable around crowds"; that on one occasion he could not attend a family gathering, "sat

out in the car by myself the whole time" and "knew that they would be staring at me"; that during the night he checks 15 to 20 times to make sure his doors are locked and his alarm system is on; and that "I have at least three, four days a week that I don't leave [the house]" (Tr. 46, 47, 57). Plaintiff also testified that he was once attacked by a much larger man, that his "[f]ace is still crooked from that beating," that he killed the man and went to prison as a result, and that plaintiff's "brother was shot four days later" (Tr. 55, 58).

At the hearing the ALJ commented on the lack of medical evidence regarding plaintiff's anxiety:

> It's also a problem for me in assessing it, seeing whether or not you qualify, because I don't have any treating medical records. You know, I have a one-shot evaluation by a psychologist who can tell me how you were on the day that you were seen. But as you know, those kinds of conditions have a tendency to wax and wane. And people have days where they're more anxious and days where they're less anxious and feeling better. And so, it's hard for me to get a real grip on how you are on a regular basis.

(Tr. 50-51.)[1] The "one-shot evaluation" to which the ALJ referred was a June 4, 2010, consultative examination by Ronald Fenton, PhD, a psychologist who diagnosed post-traumatic stress disorder and dysthymic disorder, and opined that plaintiff

> is able to understand, retain, process, and carry out simple directions. He is not capable of responding appropriately to supervisors, co-workers, and the general public in a work related environment as he

---

[1] At the hearing, the ALJ indicated he needed additional information about plaintiff's "cluster headache and the shoulder, neck problem" and therefore intended to refer plaintiff for "a physical evaluation" (Tr. 68-69). Thereafter plaintiff was referred to the Sierra Medical Group, PLC, where he was seen by Drs. R. Qadir, M.D., and Katherine Karo, M.D., for neurological and physical examinations (Tr. 263-91). Neither physician provided additional information regarding plaintiff's mental condition, other than Dr. Qadir who indicated that plaintiff "should also be seen by a psychiatrist, because of his depression and anxiety, which could be making his headaches worse" (Tr. 265).

>presents with anti-social personality traits as well as paranoia. He appears to be vulnerable and in a position subject to decline. I suspect that the pressures of employment would be a cause that could result in his failure to progress toward mood stabilization.

(Tr. 202-03.)

Ken Lovko, PhD, who completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment, gave a contradictory evaluation of Dr. Fenton's report. After quoting the above-quoted four sentences, Dr. Lovko stated: "This is given weight" (Tr. 231). He then proceeded to state he was giving Dr. Fenton's report "little weight as it is a one time snapshot assessment of the clmt. In addition, while examiner cites antisocial traits and paranoia as being impediments to functioning, he gives no diagnosis incorporating these issues" (Tr. 231). The first sentence is illogical because "mental disorders are not uncommonly diagnosed after one interview." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989). And the second sentence is incorrect because Dr. Fenton diagnosed post-traumatic stress disorder and dysthymia, both of which diagnoses Dr. Lovko acknowledged and, it would appear, accepted (Tr. 222, 224). The ALJ nonetheless accepted Dr. Lovko's conclusion that plaintiff "can manage the stresses involved with simple work" (Tr. 235) and rejected Dr. Fenton's opinion that plaintiff "is not capable of responding appropriately to supervisors, co-workers, and the general public in a work related environment" for the reasons suggested by Dr. Lovko.

As to plaintiff's mental impairments, the ALJ's error is two-fold. First, while the ALJ himself acknowledged that he had insufficient evidence "to get a real grip on how you are on a regular basis," he neglected to cure this insufficiency by developing the record further – although he did further develop the record as to plaintiff's physical problems by referring him to Drs. Qadir and Karo for consultative examinations. *See* n.1, *supra*. The only additional evidence (regarding

3

plaintiff's mental impairments) to come from those examinations is that plaintiff's depression and anxiety warranted further investigation by a psychiatrist. Second, the ALJ erred by relying on the poor reasons suggested by Dr. Lovko (who did not examine plaintiff) to reject the opinion of Dr. Fenton (who did examine plaintiff) that plaintiff "is not capable of responding appropriately to supervisors, co-workers, and the general public in a work related environment as he presents with anti-social personality traits as well as paranoia." As noted above, Dr. Lovko's criticisms of Dr. Fenton's report (i.e., that it is a "one time snapshot assessment" and that "no diagnosis" was given) are invalid.[2] On remand, these errors must be corrected by further developing the record as to the nature and extent of plaintiff's paranoia, depression and anxiety. This should be accomplished by referring plaintiff for one or more consultative examinations by a psychologist or psychiatrist, as the ALJ deems appropriate. The ALJ's revised findings must then be included in hypothetical questions to the vocational expert ("VE") to determine whether work exists which a person with plaintiff's impairments – both physical and mental – can perform. Only when the record is more fully developed will the ALJ have an evidentiary basis for making such findings and determining whether plaintiff is per se disabled under any of the listed impairments.

---

[2] Dr. Lovko offered two other reasons for finding plaintiff only "partially credible," namely, "[n]o psychotropic meds reported" and "[n]ot currently receiving psychiatric treatment or psychotherapy services" (Tr. 235). The first statement is contradicted by Dr. Qadir's list of plaintiff's medications, which includes amitriptyline (Tr. 263), a drug that "affects chemicals in the brain that may become unbalanced [and] is used to treat symptoms of depression." http://www.drugs.com/search.php?searchterm=amitriptyline. The second statement is irrelevant. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) ("We have held that a claimant's failure to seek formal mental health treatment is 'hardly probative' of whether the claimant suffers from a mental impairment, . . . and 'should not be a determinative factor in a credibility assessment' relating to the existence of a mental impairment."). Dr. Lovko's reliance on such reasoning in justifying his rejection of Dr. Fenton's findings further reduces the weight Dr. Lovko's opinion may be given in assessing plaintiff's credibility and ability to work.

The ALJ also erred in his assessment of plaintiff's headaches.  Plaintiff testified that once or twice per year he experiences "cluster headaches,"[3] which last "[a]s long as 42 days" (Tr. 42, 54).  In addition, four or five times per week plaintiff experiences what he described as "whole head headache[s], to which he responds by lying down "for maybe an hour or two" (Tr. 42).  In January 2011 plaintiff was seen by Dr. Randall Benson, M.D., of the Harper Neurology Clinic, whose report states:

> The pattern of his headaches is that they are always left-sided. . . . The pain is generally excruciating. There has been times when he has actually contemplated his own suicide because of the severity [of] the pain. The pain is variably throbbing or feels like an icepick in his head. He will typically have clusters of headaches. There seems to be a crescendo/decrescendo pattern that lasts about 3 to 4 weeks, where he will have the headaches nearly every day, sometimes for several hours. He has gone emergency room [sic] many times over the years[4] . . . . They can occur at anytime without provocation, although he does think that when he has sinus problems, that this may trigger his headache. . . .

(Tr. 238-39.)  Dr. Benson ordered an MRI of plaintiff's brain, which was normal (Tr. 241).  At a follow-up appointment in May 2011, Dr. Benson noted that plaintiff

> tells me that he has been doing fairly well, is definitely out of his cluster currently, although he does have milder headaches. In fact, he had 1 last Thursday that lasted until Saturday. This type of headache, which he calls a regular headache, involves the temples and also some pain behind the eyes. He describes this as an ache. He takes Tylenol and 800 mg of Motrin for his headaches and generally will seclude himself. . . . His last cluster episode lasted between October and January, so it has been more than 4 months since his cluster ended. He thinks that it was extended because of some sinus

---

[3] "Cluster headaches occur in cyclical patterns or clusters, which gives the condition its name. Cluster headache is one of the most painful types of headache." http://www.mayoclinic.com/health/cluster-headache/DS00487

[4] The record contains one report of such a visit in November 2010 (Tr. 248).

5

problems that he had.

(Tr. 245.) Plaintiff testified that "[m]ost times, medications don't work. Haven't really found anything that work[s] with them" (Tr. 43).

While the ALJ included "cluster headaches" among plaintiff's severe impairments (Tr. 15), he did not make any findings as to the frequency, duration or severity of plaintiff's cluster headaches or his "whole head" headaches. Nor did he make any findings regarding plaintiff's testimony that he must lie down four or five times per week for an hour or two to relieve the more commonly occurring headaches, or that the cluster headaches, which Dr. Benson described as "generally excruciating," last for weeks. Nor did the ALJ include any findings regarding this impairment in his hypothetical questions to the VE. The VE's testimony has no evidentiary value unless it is given in response to a hypothetical question which "'accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984). "This means that the question must 'reference all of a claimant's limitations,' though it need not contain a list of the claimant's medical conditions." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 494 (6th Cir. 2010), *quoting Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Because the ALJ made no findings regarding plaintiff's headaches (except to find that plaintiff's cluster headaches are a severe impairment and to summarize the medical records pertaining to them, *see* Tr. 15, 18) and did not include any such findings in his hypothetical questions to the VE, the ALJ erred in relying on the VE testimony to support his conclusion that work exists which plaintiff can

perform.[5]  The case must be remanded for correction of this error.

Finally, the Court notes that the ALJ failed to develop the record regarding the side effects of plaintiff's medications.  At the July 23, 2011, consultative examination, Dr. Qadir stated that plaintiff "is on Verapamil, Topamax, Soma, Colace, metformin, amitriptyline, Lyrica, meloxicam, tramadol" (Tr. 263).  Dr. Karo added Glucophage to this list (Tr. 277).  Several of these medications have significant and well documented side effects.[6]  Yet the ALJ did not inquire about side effects or make any other effort to develop the record as to this medically and vocationally significant issue.  On remand, the ALJ must (1) determine which medications plaintiff is taking and has taken during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects and (3) incorporate these findings in a proper hypothetical question to the VE to determine whether work exists in significant numbers that can be performed by a person experiencing such side effects.  Accordingly,

---

[5] Indeed, the VE testified that "employers are going to allow, during an eight-hour shift, [a] 10 to 15-minute break, morning to afternoon, half an hour to 45-minute lunch period" and that "employers will tolerate typically up to two absences per month" (Tr. 68).  If plaintiff's headaches are as frequent, as severe and as long-lasting as plaintiff testified, it seems plaintiff's need to lie down to obtain relief would be incompatible with these restrictions on workday breaks.  This issue must be further developed and resolved on remand.

[6] For example, the medical literature reports that "unusual tiredness or weakness" is a side effect of Verapamil and Topamax; and that sleepiness is a side effect of metformin and Lyrica.  *See* http://www.drugs.com.  The Court notes plaintiff testified that he has little energy and is "always tired" (Tr. 44).

IT IS ORDERED that Magistrate Judge Grand's Report and Recommendation is rejected.

IT IS FURTHER ORDERED that both parties' motions for summary judgment are denied.

IT IS FURTHER ORDERED that this matter is remanded for further proceedings as indicated above.

|  |  |
|---|---|
| | S/ Bernard A. Friedman_____ |
| Dated: August 28, 2013 | BERNARD A. FRIEDMAN |
| Detroit, Michigan | SENIOR UNITED STATES DISTRICT JUDGE |